IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

VINCENT ELLIOT WILSON,
    Plaintiff,

v.                                                                                                 Civil No. 3:23cv82 (DJN)

BETH ARTHUR, *et al.*,
    Defendants.

## **MEMORANDUM OPINION**

Vincent Elliot Wilson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] Wilson's request to proceed *in forma pauperis* will be granted. (ECF No. 2.) The matter is before the Court for evaluation of Wilson's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated below, the Complaint, (ECF No. 1), and the action will be DISMISSED.

### I.    PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915(e)(2), 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a court accepts a plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). The plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable," *id.* "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while a court must liberally construe *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. PERTINENT SUMMARY OF ALLEGATIONS AND CLAIMS

In his Complaint, Wilson names as Defendants: Arlington County Detention Facility Sheriff Beth Arthur, Corizon Health ("Corizon") and Mediko Correctional Healthcare ("Mediko"). (ECF No. 1, at 2.) Wilson alleges the following: [2]

> 10. On July 14, 2021, in the afternoon, I arrived at Defendant Beth Arthur's facility, Arlington County Detention Facility.
> 11. I went through the intake medical screening during processing and told the nurse my problems, but I wasn't examined right.
> 12. A few months later, I told Defendant Corizon Health that I have a severe rash on me but was ignored and not treated.
> 13. The doctor that was representing Defendant Corizon Health . . . was Mr. Ashby.
> 14. The very severe rash is on the bottom of my stomach and at the top of both thighs, on and near the groin area, red and light black looking.
> 15. In the past and upon arrival, I informed Defendants Corizon Health and Mediko Correctional Healthcare verbally and in writing sick calls that I have a very severe rash on me and need to be treated.

---

[2] The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from the Complaint.

16. In between January 13–24, 2022, I let a lady nurse representing Defendant Mediko Correctional Healthcare know that I got a severe rash me while on medical unit cell #11 when I was down there when I caught corona.
17. I believe she lied and told me she was going to treat me and prescribe me something but didn't.
18. Defendant Beth Arthur's policy requires that all inmates have a right to adequate medical care or attention, per inmate handbook.
19. It has been over a year before I received treatment and the severe rash has gotten worse due to Defendants Corizon Health and Mediko Correctional Healthcare delaying examination and treatment.
20. On October 27, 2022, at approximately 7:35 a.m., I filled out a Defendant Mediko Correctional Healthcare sick call request and told them that a nurse had told me that I was going to be called to medical concerning the rash, back then in January 2022, but was never called.
21. November 1, 2022, at approximately 1:05 p.m., I went down to medical and seen Corizon Health Nurse Donna, I believe that's her name, and I was basically examine[d] once I informed her about the severe rash while I was originally down there for something else more important.
22. Next, I was given and prescribed some Hydrocortisone by Defendant Corizon Health Nurse Donna was a keep on person (KOP) contract from Defendant Mediko Correctional Healthcare with their name on it.
23. Due to the death of inmates of color in Defendant Beth Arthur's facility, Corizon Health was supposed to leave back then in December 2021, per Washington Post newspaper, but some nurses stayed.
24. Then Defendant Beth Arthur let Defendant Mediko Correctional Healthcare take over after Defendant Corizon Health's departure at the Arlington County Detention facility.
25. November 26, 2022, at approximately 3:41 p.m., I filled out a sick request for a refilling of the cream Hydrocortisone and it was brought to me the day after.
26. December 27, 2022, at approximately 10:10 p.m., I filled out a sick call request for a refill of my cream Hydrocortisone for the severe rash.
27. January 15, 2023, at approximately 10:15 p.m., I got a sick call request from the nurse and filled it out and turned it in but had to give it to the housing unit deputy on unit 11A cell #8 about a refilling of my Hydrocortisone cream.
28. As a result of the Defendants Corizon Health Care and Mediko Correctional Healthcare being negligent, injured me physically and made the severe rash worse by waiting too late to treat me, failing to give me necessary medication once I informed them of the issue.

(*Id.* at 3–5.)

Wilson contends that all three Defendants violated his Eighth and Fourteenth Amendment rights by denying him adequate medical care[3] and that Defendants Corizon and Mediko were also negligent and committed medical malpractice under state law. (*Id.* at 6–7.) Wilson asks for monetary damages and for the Court to "[i]ssue and injunction requiring that Defendants Corizon Health and Mediko Correctional Healthcare provide the much-needed treatment to cure medical need until gone." (*Id.* at 8.)

### III.  ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of Wilson's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). As discussed below, Wilson's Complaint will be dismissed for failing to state a claim for relief.

#### A.  No Personal Involvement

First, in order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

---

[3]  Although Wilson has five separately numbered paragraphs for his Eighth and Fourteenth Amendment claims, these five paragraphs allege one claim of denial of adequate medical care. (ECF No. 1, at 6–7.) Further, as explained below in Part III.B., the Eighth Amendment does not apply to Wilson's claims, because Wilson is likely a pretrial detainee.

Constitution." *Id.* Accordingly, a plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

### 1. Defendant Beth Arthur

Wilson contends that Defendant Arthur as Sheriff is liable, because she "is generally responsible and liable for all staff actions," (ECF No. 1, at 2), and was responsible for hiring the medical contractors, (*id.* at 5). Wilson fails to allege any facts that would suggest that Defendant Arthur acted personally in the deprivation of Wilson's constitutional rights. Rather, Wilson attempts to impose liability on Defendant Arthur as the Sheriff for Arlington County based entirely on *respondeat superior*. Because Wilson alleges that Defendant Arthur should be held liable simply based on her position, he fails to state a cognizable claim for relief. *Iqbal*, 556 U.S. at 676.[4] For this reason alone, Wilson's claim against Defendant Arthur shall be DISMISSED.

### 2. Medical Contractors

Wilson also contends that Defendants Corizon and Mediko denied him adequate medical care for his rash. A private corporation cannot be held liable "for torts committed by [its

---

[4] To the extent that Wilson contends that Defendant Arthur is somehow liable on a theory of supervisory liability, that claim would also fail. To allege a claim that a supervising officer failed to fulfill her duties to protect an inmate by ensuring her subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

employees] when such liability is predicated upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 *only* when an official policy or custom of the Corporation causes the alleged deprivation of federal rights." *Id.* (emphasis in original) (citations omitted). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)); *see Austin*, 195 F.3d at 729 (explaining that principles applying in context of municipality and local governments "are equally applicable to a private corporation acting under state law").

Here, Wilson has made no effort, as he must, "to identify the offending [corporate] policy [or custom] with precision." *Carter*, 164 F.3d at 218. Because Wilson fails to identify any policy, much less a specific policy or custom of Defendants Corizon or Mediko, that deprived him of his constitutional rights, he fails to state a claim for relief. For this reason alone, Wilson's claims against Defendants Corizon and Mediko should be DISMISSED.

---

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted). Wilson fails to allege facts that support any one of these three factors. Accordingly, Wilson has failed to state a claim for supervisory liability.

### B. Fourteenth Amendment Claim

#### 1. Applicable Law

Even if Wilson had pled sufficient facts to allege Defendants' individual liability, he would nevertheless fail to state a cognizable claim for relief. Wilson argues that Defendants violated his Eighth and Fourteenth Amendment rights when they denied him adequate medical care. (ECF No. 1, at 6–7.) However, because Wilson was likely a pretrial detainee and not a convicted prisoner at the time at the time of his allegations that Defendants "show[ed] 'deliberate indifference' to [his] health," (ECF No. 1, at 7), the Fourteenth Amendment, not the Eighth Amendment, governs his claim. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Therefore, "a pretrial detainee makes out a violation [of the Fourteenth Amendment] at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays*, 992 F.3d at 300 (quoting *Gentile*, 849 F.2d at 870).

To plead an Eighth Amendment claim, an inmate must allege facts that (1) objectively indicate that the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) subjectively indicate that the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

8

would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, the objective-prong analysis does not end there. In addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires the plaintiff to allege facts which indicate that a particular defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form the inference that "the official in question subjectively recognized a

9

substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

Wilson fails to allege facts to satisfy the objective prong of the Fourteenth Amendment inquiry.[5] Wilson claims that he had a "severe rash" but freely admits that even though he had purportedly had this "severe rash" for some time, he sought medical treatment for other health concerns that were "more important." (ECF No. 1, at 4.) While a severe rash might plausibly

---

[5] While Wilson also does not allege facts indicating that Defendants knew of and disregarded an excessive risk of harm to Wilson and, thus, fails to satisfy the subjective component of the Fourteenth Amendment as well, no need exists to extensively examine that here. Wilson's claims may be readily dismissed, because he fails to demonstrate any constitutionally significant injury from Defendants' actions.

result in sufficiently serious harm under the Fourteenth Amendment, Wilson fails to allege any such injury here. *See Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) (explaining that a condition is sufficiently serious if it is "'a condition of urgency, one that may produce death, degeneration, or extreme pain'" (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996))). Instead, Wilson does not allege facts indicating that he suffered any injury, much less a serious or significant physical or emotional injury, from Defendants' failure to treat his rash.

Wilson also alleges no significant adverse effects from the delay in receiving hydrocortisone cream from Defendants. *See Mata*, 427 F.3d at 751. At most, Wilson claims that the rash got worse, and he "suffered further injury and physical injury" without any further explanation. (ECF No. 1, at 5, 7.) This is insufficient to plausibly suggest that he suffered any substantial harm from the delay. Thus, Wilson fails to allege facts indicating that the delay in receiving treatment itself caused him substantial harm. *See Webb*, 281 F. App'x at 166. In sum, because Wilson alleges no injury from Defendants actions, he fails to satisfy the objective prong of the Fourteenth Amendment inquiry. Wilson's claim of denial of adequate medical care will be DISMISSED for failure to state a claim.

### C. State Law Claims

Wilson also vaguely suggests that Defendants Corizon and Mediko committed "the tort of medical malpractice" and the "tort of negligence" under state law. (ECF No. 1, at 7.) Again, Wilson fails to allege the bare minimum required to state a claim for relief. Generally, pendant state law claims should be dismissed if the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In light of the preliminary dismissal of the federal claims and the vagueness of Wilson's state law claims, the Court declines to exercise its

discretion to retain the state tort claims. *Jenkins v. Weatherholtz*, 909 F.2d 105, 110 (4th Cir. 1990). Accordingly, Plaintiff's state law claims will be DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Wilson's constitutional claim will be DISMISSED for failure to state a claim. Wilson's state law claims will be DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Wilson.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: March 14, 2023